ZURICH AMERICAN INSURANCE
COMPANY, Appellant,

v.

HUNT PETROLEUM (AEC), INC.
F/K/A AVIARA ENERGY COR-
PORATION, Appellee.

No. 14–03–00729–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 24, 2004.

Jacalyn D. Scott, Houston, for appellant.

Richard Martin Hunt, Dallas, for appellee.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## OPINION

YATES, Justice.

This is a case involving liability for damage to an oil drilling rig caused by its submersion in saltwater floods during a tropical storm. Appellant and appellee have differing interpretations of the relevant contract, and each moved for summary judgment. At issue is the propriety of the trial court's granting the appellee's motion for summary judgment and denying the appellant's motion. Because we find a fact issue regarding an essential phrase in the contract and that the contract is ambiguous as it is subject to more than one reasonable but conflicting interpretation, we reverse and remand.

Pursuant to a form daywork drilling contract, appellee Hunt Petroleum (AEC), Inc. f/k/a Aviara Energy Corporation ("Hunt") was operating an oil drilling rig for Nabors Drilling U.S.A., Inc. in Vermilion Parish, Louisiana when Tropical Storm Francis hit the Louisiana coast on September 12, 1998. The rig was submerged under at least four feet of saltwater, causing extensive damage. Appellant Zurich American Insurance Company paid its insured, Nabors, $955,120.26 to repair the damage, and Zurich, as subrogee of Nabors's rights under its contract with Hunt, brought this action to recover those funds from Hunt.

The contract at issue is a fill-in-the-blank form contract prepared by the International Association of Drilling Contractors. Under the contract, Hunt is the "Operator," and Zurich's insured Nabors is the "Contractor." The following three provisions are relevant in this suit:

14. RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE

OF LIABILITY AND ALLOCATION OF RISK:

14.1 Contractor's Surface Equipment: Contractor shall assume liability at all times for damage to or destruction of Contractor's surface equipment, regardless of when or how such destruction occurs, and Contractor shall release Operator of any liability for any such loss, except loss or damage under the provisions of Paragraphs 10 or 14.3.

. . . .

14.3 Contractor's Equipment—Environmental Loss or Damage: Notwithstanding the provisions of Paragraph 14.1 above, Operator shall assume liability at all times for damage to or destruction of Contractor's equipment caused by exposure to highly corrosive or otherwise destructive elements, including those introduced into the drilling fluid.

17. FORCE MAJEURE:

Neither Operator nor Contractor shall be liable to the other for any delays or damage or any failure to act due, occasioned or caused by reason of any laws, rules, regulations or orders promulgated by any Federal, State, or Local governmental body or the rules, regulations, or orders of any public body or official purporting to exercise authority or control respecting the operations covered hereby, including the procurance or use of tools and equipment, or due, occasioned or caused by strikes, action of the elements, water conditions, inability to obtain fuel or other critical materials, or other causes beyond the control of the party affected thereby. In the event that either party hereto is rendered unable, wholly or in part, by any of these causes to carry out its obligations under this Contract, it is agreed that such party shall give notice and details of Force Majeure in writing to the other party as promptly as possible after its occurrence. In such cases, the obligations of the party giving the notice shall be suspended during the continuance of any inability so caused except that Operator shall be obligated to pay to Contractor the Force Majeure Rate as provided for in Paragraph 4.7 above.

Both parties moved for summary judgment, claiming the contract is unambiguous and supports the interpretation that the other party is liable for damage to the rig. Zurich's theory is that paragraph 14.3 states that Hunt is liable "at all times," even in a force majeure situation, for damage to Nabors's equipment caused by "exposure to highly corrosive or otherwise destructive elements" and that salty floodwater is both highly corrosive and destructive. Hunt claims that paragraph 17 controls as the damage to the rig was caused by a flood from a tropical storm, which is an "action of the elements," and that paragraph 14.3 does not control because the commonly understood meaning in the industry of paragraph 14.3 excludes damage caused by salty floodwater and paragraph 14.3 does not expressly state that it overrides paragraph 17.

The trial court found that, "with regard to this incident, Paragraph 17 of the parties' contract controls to the exclusion of Paragraph 14.3" and therefore granted Hunt's summary judgment motion and denied Zurich's. In four issues, Zurich claims the trial court's summary judgment ruling was erroneous.

■ The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When, as here, the trial court expressly states the ground on which it granted the motion, we must consider that

ground and may consider other grounds the trial court did not rule on in the interest of judicial economy. *Cin. Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996).

██ Our primary concern in interpreting a contract is ascertaining the true intent of the parties. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996); *Hewlett–Packard Co. v. Benchmark Elecs., Inc.,* 142 S.W.3d 554, 561 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). We examine the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Hewlett–Packard,* 142 S.W.3d at 561. We give terms their plain, ordinary, and generally accepted meaning unless the contract shows the parties used them in a technical or different sense. *Heritage Res.,* 939 S.W.2d at 121.

██ If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Coker,* 650 S.W.2d at 393; *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 131 (Tex.App.—Houston [14th Dist.] 2000, pet. dism'd). If, however, a contract is capable of more than one reasonable interpretation, it is ambiguous. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003); *Hewlett–Packard,* 142 S.W.3d at 561. This court may conclude a contract is ambiguous, even though the parties do not so contend. *Hewlett–Packard,* 142 S.W.3d at 561. When a contract is ambiguous, summary judgment is improper because the interpretation of the contract becomes a fact issue. *Coker,* 650 S.W.2d at 394; *Cook,* 15 S.W.3d at 131.

██ The parties' interpretation of a contract is parol evidence, and parol evidence is not admissible to create an ambiguity. *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 283 (Tex.1996). Only after a contract has been determined to be ambiguous can parol evidence be considered to help ascertain the parties' true intent. *Id.; Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc.,* 56 S.W.3d 313, 319 (Tex.App.—Houston [1st Dist.] 2001, pet. denied). In determining whether a contract is ambiguous, we look to the contract as a whole, in light of the circumstances present when the contract was executed. *Sun Oil Co. (Del.) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); *Mescalero,* 56 S.W.3d at 319; *see also Hewlett–Packard,* 142 S.W.3d at 561 ("We construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served."). These circumstances include the commonly understood meaning in the industry of a specialized term, which may be proven by extrinsic evidence such as expert testimony or reference material. *See Mescalero,* 56 S.W.3d at 320, 323; *KMI Cont'l Offshore Prod. Co. v. ACF Petroleum Co.,* 746 S.W.2d 238, 241 (Tex.App.—Houston [1st Dist.] 1987, writ denied).

██ Hunt's theory is that paragraph 17 clearly controls by its plain language that neither party shall be liable "for any … damage … caused by … action of the elements." Paragraph 14.3 explicitly states that it applies "[n]otwithstanding the provisions of Paragraph 14.1," but because paragraph 17 is not mentioned, Hunt asserts that paragraph 17 applies even in the face of a claim under paragraph 14.3. Zurich does not dispute that a flood from a tropical storm is an action of the elements. Nevertheless, Zurich contends paragraph 17 applies only to delayed or suspended performance, not damage to equipment. Zurich first points to the historical meaning of force majeure clauses as relating

only to excusing performance. *See Perlman v. Pioneer Ltd. P'ship*, 918 F.2d 1244 (5th Cir.1990). Regardless of its historical underpinnings, the scope and application of a force majeure clause depend on the terms of the contract. *See Sun Operating Ltd. P'ship v. Holt*, 984 S.W.2d 277, 282–83 (Tex.App.—Amarillo 1998, pet. denied); *Tex. City Ref., Inc. v. Conoco, Inc.*, 767 S.W.2d 183, 186 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

Zurich interprets paragraph 17 as being limited to operational obligations by the phrase "respecting the operations covered hereby." However, reading that phrase in the context of the sentence as a whole shows that it describes types of laws, rules, regulations, and orders from a governmental or public body and does not limit the scope of the items in the remainder of the sentence, such as "action of the elements." Finally, Zurich claims that Hunt never invoked paragraph 17 by giving written notice. As written, the clause requires notice when a party is unable "to carry out its obligations" under the contract, but it is silent as to a situation involving only damage and not an inability

to perform. It is, therefore, Hunt's interpretation that no notice is required in such circumstances.[1]

Zurich claims that paragraph 14.3 trumps even a force majeure situation because it imposes liability on the operator "at all times" for damage or destruction "caused by exposure to highly corrosive or otherwise destructive elements." Zurich presented undisputed evidence that floodwater is destructive and that salty floodwater is corrosive, and therefore, under the plain meaning of those words, the damage to the rig is covered by paragraph 14.3. Hunt countered with expert evidence that the common industry understanding of "highly corrosive or otherwise destructive elements" covers only materials that emanate from the well or are added to the drilling fluid, which does not cover saltwater flooding. Zurich then provided its own expert evidence that there is no generally understood industry meaning for that phrase and that therefore we should use its ordinary meaning, which would include damage from saltwater flooding.[2]

---

1. In addition to its history, grammar, and notice arguments, Zurich points to evidence that Hunt could have moved the rig before the storm hit and then asserts that Hunt cannot use the force majeure clause because "when it is a party's own negligence that proximately causes the loss, the courts have held that it cannot be a force majeure event as a matter of law." However, Zurich did not make any negligence argument to the trial court, and therefore it cannot make such an argument for the first time on appeal. *Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 453 (Tex.App.—Houston [14th Dist.] 2001, pet. denied). Zurich asserted below that since Hunt could have taken steps to protect the rig, the damage was not "beyond the control" of Hunt under paragraph 17. That is not the same as arguing that negligence essentially negates a force majeure clause as a matter of law. *See Sun Operating*, 984 S.W.2d at 283–84 (refusing to imply a duty to exercise due diligence into force maj-

eure clause containing language about causes "beyond the control" of the party). Even assuming Zurich preserved this argument and that negligence was a proper theory under the wording of this force majeure clause, Zurich presented no evidence of a standard of care or that Hunt violated any such standard.

2. Zurich criticizes Hunt's interpretation in that it gives the word "elements" a different meaning in paragraph 17 than in paragraph 14.3. This is too narrow of a view. Both parties appear to agree that the phrase "action of the elements" in paragraph 17 refers to weather-type conditions. Paragraph 14.3 refers not to an "action of the elements" but to "highly corrosive or otherwise destructive elements," which might well be intended to cover nonweather conditions such as gas or chemical exposure. Because the context and phrasing are different, it is not unreasonable that its meaning would be different in each paragraph as well.

We conclude that summary judgment was improper in this case. First, there is a fact issue as to whether there is a common industry understanding as to the meaning of the phrase "highly corrosive or otherwise destructive elements." Though Hunt presented expert evidence of a common industry understanding of the phrase, Zurich's experts dispute the existence of such an understanding. Hunt argues that its experts are more credible based on their qualifications and experience, but that is for the fact finder to determine.

We also conclude that the contract is subject to more than one reasonable interpretation. Paragraph 17, by its plain terms, applies to a situation of damage caused by a flood. Even though Zurich argues that force majeure clauses historically function to excuse performance and that portions of paragraph 17 refer to such situations, Hunt's interpretation that gives meaning to the word "damage" is not unreasonable.[3] *See Schaefer,* 124 S.W.3d at 159 (contracts should be interpreted to avoid rendering a provision meaningless). Assuming no common industry understanding excludes it, Zurich's plain language interpretation of "highly corrosive or otherwise destructive elements" to include damage from saltwater flooding is also reasonable. *See Heritage Res.,* 939 S.W.2d at 121.

Not only are we faced with interpretations of two clauses producing different outcomes as applied to this case, there are two reasonable but divergent ways to reconcile these clauses. Zurich's interpretation that paragraph 14.3 controls based on the phrase "at all times" is certainly reasonable, based on the ordinary meaning of that phrase. On the other hand, the parties knew how to expressly exclude other contract provisions from the scope of paragraph 14.3 (as they did with paragraph 14.1), but they did not include paragraph 17 in that exclusion. *See Hewlett–Packard,* 142 S.W.3d at 562 ("[W]hen the parties desired a specific due date, they provided for it in the Agreement."). It is therefore reasonable to interpret paragraph 14.3 as being subject to paragraph 17.

Given conflicting yet reasonable interpretations that cannot be harmonized, we conclude the contract is ambiguous. *See Trinity Indus., Inc. v. Ashland, Inc.,* 53 S.W.3d 852, 860 (Tex.App.—Austin 2001, pet. denied) (finding contract ambiguous when "faced with at least two somewhat contradictory meanings" that were both reasonable). Therefore, the trial erred in granting summary judgment.[4]

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

---

**3.** Even Zurich's counsel admitted at oral argument that the term "damage" in paragraph 17 could be interpreted to include physical damage caused by a force majeure event.

**4.** Because we conclude there is a fact issue regarding the interpretation of the contract, we need not consider whether there is also a fact issue regarding the amount of Zurich's claimed damages.