Affirmed in Part, Reversed and Remanded in Part and Opinion filed May
18, 2006









Affirmed in Part, Reversed and Remanded in Part and Opinion filed May 18, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01080-CV

____________

 

ROSEMARY SYDLIK, Appellant

 

V.

 

REEIII, INC. D/B/A
CURVES FOR WOMEN, CURVES INTERNATIONAL, INC., AND ECOLOGICAL SERVICES
INTERNATIONAL, INC., Appellees

 



 

On Appeal from the 151st
District Court

Harris County, Texas

Trial Court Cause No. 2004-07887

 



 

O P I N I O N








Appellant, Rosemary Sydlik, sued
appellees, REEIII, Inc. d/b/a Curves for Women, Curves International Inc., and
Ecological Services International, Inc., (collectively, Aappellees@), for injuries
arising out  of her use of appellees= weight-training
equipment.  Appellees moved for summary
judgment relying on a pre-injury release. 
The trial court granted the motion as to all three. Sydlik appeals the
grant of summary judgment.  We affirm as
to REEIII, Inc. and Curves International, Inc. and reverse and remand as to
Ecological Services International, Inc. because Ecological Services was not
mentioned in the release and therefore it cannot avail itself of the release=s protections.

Factual and Procedural Background

We set out the facts in the light most
favorable to Sydlik, as she was the non-movant below.  On February 17, 2003, Sydlik transferred an
existing Curves membership to the club location at issue in this case.  As part of that membership transfer, Sydlik
signed a general release, the relevant parts of which are set forth below.

In consideration
of being allowed to participate in the activities and programs of Curves for
Women7 and to use its
facilities, equipment and machinery in addition to the payment of any fee or
charge, I do hereby waive, release and forever discharge Curves International
Inc., Curves for Women7, and their officers, agents, employees,
representatives, executors, and all others (Curves7 representatives)
from any and all responsibilities, or liabilities, from injuries or damages
arriving [sic] out of or connected with my attendance at Curves for Women7, my participation
in all activities, my use of equipment or machinery, or any act or omission,
including negligence by Curves7 representatives. 

In June 2003, Sydlik injured herself while
using a shoulder press/lat pull machine. 
She sued REEIII, Inc. d/b/a Curves for Women (Athe Club@ where the injury
took place), Curves International, Inc. (Athe Designer@ of the machine),
and Ecological Services International, Inc. (Athe Manufacturer@ of the
machine).  Her lawsuit against all was
based on negligence, premises liability, and manufacturing and design
defects.  All of these claims are based
in negligence.

Relying on the release, appellees moved
for summary judgment to dismiss all claims against them.  The trial court granted the motion for all
three and rendered a final judgment in their favor.  Sydlik timely filed this appeal urging us to
reverse the trial court as to each of the appellees.  We affirm as to the Club and the Designer,
but reverse the trial court=s judgment in
favor of the Manufacturer because it was not mentioned in the release.








Analysis

I.        Standard
of Review

To prevail on a motion for summary
judgment, the movant must show that there is no genuine issue of material fact
and that she is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  If the movant conclusively negates at least
one essential element of the cause of action, then she is entitled to summary
judgment on that claim.  Grant, 73
S.W.3d at 215.  When we review a summary
judgment, we take as true all evidence favorable to the non-movant; we also
indulge every reasonable inference and resolve any doubts in favor of the
non-movant.  Id.  Because we are reviewing a legal
determination, we give the trial court no deference.

II.       Pre-Injury
Releases

Initially, we must determine whether the
pre-injury release is effective.  If it
is not, then we must reverse as to all three appellees.  If it is effective, then we must determine
what parties and subject matter are protected by its protective language.  

In assessing the effectiveness of the
release, we must turn to the doctrine of fair notice and determine if the
release complied with its requirements. 
If the release failed to comply with either of fair notice=s two requirementsCconspicuousness
and express negligenceCthen it is ineffective to the extent
specific parties or subject matter is not conspicuously and expressly listed.

A.      Fair
Notice








A pre-injury release is a risk-shifting contractual
agreement.  As such, it must satisfy the
fair notice doctrine.  See DDD Energy,
Inc. v. Veritas DGC Land, Inc., 60 S.W.3d 880, 883 (Tex. App.CHouston [14th
Dist.] 2001, no pet.); see also Dresser Indus., Inc. v. Page Petroleum, Inc.,
853 S.W.2d 505, 507 (Tex. 1993) (stating that fair notice requirements apply to
releases).  Those requirements are: (1)
the conspicuousness requirement, and (2) the express negligence test.  DDD Energy, 60 S.W.3d at 883.  If a release does not satisfy both of the
fair notice requirements, then it is unenforceable.  Thus, fair notice is the chief test we must
apply, and conspicuousness and express negligence are merely the two prongs of
that test.

1.       Conspicuousness


To be conspicuous, something must appear
on the face of the contract to attract the attention of a reasonable
person when he looks at it.  Dresser,
853 S.W.2d at 508.  However, that
requirement is not necessary when the indemnitorChere, SydlikCpossessed actual
notice or knowledge of the indemnity agreement. 
Id. at 508 n.2.  Stated
differently, actual notice may serve as a substitute for the conspicuousness
prong of the fair notice doctrine.  In this
case, both conspicuousness and actual notice are present.  

The document is only one page with only
three paragraphs.  It states in large,
bolded, underlined letters at the top of the page that it is an agreement and a
release.  Additionally, Sydlik initialed
each paragraph.  It was conspicuous.  See generally Coastal Transp. Co. v. Crown
Cent. Petroleum Corp., 20 S.W.3d 119, 126 (Tex. App.CHouston [14th
Dist.]  2000, pet. denied) (holding that
an indemnity agreement less than two and one-half pages, containing eight
paragraphs, referenced in two other paragraphs, which the party read, was
conspicuous). 

 Additionally, Sydlik admitted in her
deposition she had actual notice of the release.  Utilizing either the conspicuousness
requirement or actual notice, this prong of the fair notice doctrine is
satisfied.

2.       Express
Negligence








The supreme court established the express
negligence test to cut through the ambiguity of indemnity agreements.  Dresser, 853 S.W.2d at
507.  Parties seeking to indemnify
themselves from their own negligence must express that intent in specific
terms.  Id.  Provisions that do not express the parties= intent within the
four corners of the document are unenforceable as a matter of law.  Id. 
The provision is either clear and enforceable or it is not.  Id. 
Another formulation of the rule is that the provision must Amention@ the claim to be
released.  Victoria Bank & Trust
Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991).  Any claims not clearly within the release=s subject matter
are not released.  Id.  Additionally, we narrowly construe general
categorical release clauses.  Id.  

a.       Actual
Notice is Not a Substitute for Express Negligence

Appellees note that Sydlik actually knew
about the release and that she believed all three defendants were intended to
be covered by it.  They argue that this Aactual notice@ relieves them of
the necessity of proving that the release met the requirements of the fair
notice doctrine.

While actual notice may serve as a
substitute for conspicuousness, it may not serve as a substitute for express
negligence.  Appellees rely on case law stating
that, if there is actual notice, a party need not prove fair notice.  See, e.g., Storage &
Processors, Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004) (citing Cate
v. Dover Corp., 790 S.W.2d 559, 561 (Tex. 1990)).  However, we have found no case, including
those cited, that has ever applied actual notice outside the context of the
conspicuousness prong, much less to release or indemnify parties not listed in
the four corners of the release.  Neither
have we found a case allowing one party=s subjective understanding of a
release to revise the scope of the release. 
Actual notice has been applied to determine only whether or not the
party was on actual notice that a contract contained a release.  We know of no example, and appellees cite
none, in which a court has allowed extrinsic evidence of actual notice for any
purpose other than conspicuousness. 
Indeed, as we explain, such an approach would fly in the face of our
contract interpretation jurisprudence. 








At its heart, this release was a
contract.  As such, we use familiar
contract principles to construe it.  To
hold that Aactual notice,@ or a statement of
one party=s subjective reading of a contract, can
determine the meaning of contract terms would eliminate the purpose behind
rules of contract construction.  That
purpose is, among other things, predictability and certainty.  Appellees= approach would,
essentially, allow parol and other extrinsic evidence to create an ambiguity in
the terms of a contract, and then clarify that ambiguity favorably to the
indemnitee.[1]  

Generally, contract law does not allow
extrinsic evidence to create an ambiguity. 
See Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 732 (Tex.
1982) (stating the rule that when a contract is so worded that we can give it a
definite, legal meaning or interpretation it is not ambiguous and parol
evidence is not admissible to render a contract ambiguous); see also Zurich Am.
Ins. Co. v. Hunt Petroleum (AEC), Inc., 157 S.W.3d 462, 465 (Tex. App.CHouston [14th
Dist.] 2004,  no pet.) (AThe parties= interpretation of
a contract is parol evidence, and parol evidence is not admissible to create an
ambiguity.@). 
Appellees rely on one statement from Sydlik during her deposition in
which she states she thought she was releasing anyone Ainvolved with the
design, construction, or the equipment at the Curves for Women[.]@ Yet that is no
more than parol evidence from one of the parties to define the terms of an otherwise
unambiguous contractual term.  Sydlik=s interpretation
is unimportant when we may construe the contract without that
interpretation.  Certainly, had she
stated she did not believe she had released anyone from liability, appellees
would not put such stock in her view. 
Holding to our traditional rules of interpretation for pre-injury
releases, we turn now to determine what claims and parties were released within
the four corners of the contract.

b.       Claims
Released








As we have explained already, to satisfy
the express negligence prong, the release must mention all claims it purports
to release.  Sydlik relies on certain
cases to argue that the language in the release is not specific enough.  See Ethyl Corp. v. Daniel Constr. Co.,
725 S.W.2d 705, 708 (Tex. 1987) (holding that indemnification provision did not
expressly state the party was seeking indemnity for its own negligence so as to
satisfy express negligence test); Victoria Bank & Trust Co., 811
S.W.2d at 938B39 (determining that a settlement release
did not mention the specific claims raised and so they were not discharged); Trinity
Indus., Inc. v. Ashland, Inc., 53 S.W.3d 852, 869 (Tex. App.CAustin 2001, pet.
denied) (ruling that because a release did not specifically mention negligent
misrepresentation or fraud, those claims were not released).  However, we find the circumstances different
in those cases from the circumstances here. 
Those cases all involved clauses that did not adequately list the causes
of action or subject matter to be released, and were simply too general to be
applied under those circumstances.  That
is not the situation with this release.

This release clearly states that Sydlik is
releasing the named parties from various potential claims, including negligence
causing injury arising out of her use of machinery.  The provision reads in part, AI do hereby waive,
release, and forever discharge Curves International, Inc., Curves for Women7 . . . from any
and all responsibilities or liabilities from injuries or damages arriving [sic]
out of or connected with . . . my participation in all activities, my use of
equipment or machinery . . . including negligence by Curves7 representatives.@  Certainly, the clause encompasses many
claims.  Yet Sydlik has cited no
authority to say that a release may release only a small number of claims.  The rule is only that it must mention the
specific claims and subject matter to be released.  This provision does just that.  Sydlik=s injuries
allegedly arose out of her use of machinery and she brings claims based in
negligence.  Those claims are mentioned
in the release and it is enforceable as to Sydlik=s claims.  However, that does not end our inquiry, for
we still must determine which entities were released.

c.       Entities
the Provision Releases








As we have already discussed, appellees
ask us to hold, based upon Sydlik=s deposition
statement, that Sydlik released all three appellees.  However, as we have explained, we will not
use parol evidence, or a party=s subjective
belief, to construe an otherwise unambiguous agreement.  We examine the language of the provision to
effectuate the parties intent based upon the language they used.  See Sun Oil, 626 S.W.2d at 727B28.  Because the contract can be given a certain,
definite legal meaning, it is not ambiguous. 
See Zurich Am. Ins. Co., 157 S.W.3d at 465.  The relevant language in this contract
states:

I do hereby waive,
release and forever discharge Curves International, Inc., Curves for Women7 and their
officers, agents, employees, representatives, executors, and all others (Curves7 representatives) from any and all
responsibilities or liabilities . . . connected with my attendance at Curves
for Women7, my participation in all activities, my
use of equipment or machinery, or any act or omission, including negligence by Curves7 representatives.

(Emphasis added). 
The italicized language is clear as to whom is released: Curves
International, the Designer, Curves for Women, the Club, and their
representatives.[2]  However, Ecological Services, Inc., the
Manufacturer, is not released.  It is not
named in the release.  The negligence
claims released concern only those related to Sydlik=s participation in
the activities and use of equipment or machinery.  The release does not address the design or
construction of any machinery.  AUnless a party is
named in a release, he is not released.@  McMillen v. Klingensmith, 467 S.W.2d
193, 196 (Tex. 1971).  The language, by
its express terms, releases only the Club and the Designer.  It does not release the Manufacturer either
by name or subject matter.

3.       Pre-versus-Post-injury
Releases








In a different line of argument, appellees
argue a release mentioning general subject matter is enough to release any and
all claims even marginally related to that subject matter.  Appellees contend that because the clause releases
liability Afrom injuries or damages arriving [sic]
out of or connected with [Sydlik=s] attendance@ it necessarily
includes any and all claims resulting from an injury connected with Sydlik=s attendance at
the gymCin essence all of
Sydlik=s claims in this
case.  As support, appellees cite Memorial
Medical Center of East Texas v. Keszler. 
943 S.W.2d 433, 435 (Tex. 1997) (per curiam) (holding that a release
covering all claims relating to Keszler=s relationship
with the hospital was enough to release claims arising out of exposure to
hazardous materials).  Appellees fail to
address two problems with its argument: (1) Memorial Medical Center
involved a release after the subject matter of litigation arose; and (2) that
case did not eliminate the requirement of specifically mentioning each released
tortfeasor.

Texas courts treat settlements of
litigation differently from pre-injury releases.  Memorial Medical Center highlights
this point.  In that case, the supreme
court specifically stated that while pre-accident waivers of gross negligence
are against public policy, post-accident releases are not.  Id. 
The reason should be obvious: we want to encourage settlement of
existing claims.  However, when no
litigation is ripe or pending, we read releases more narrowly because releases
and indemnity agreements before an injury occurs involve different policy
concerns.  It is for that reason, as we
have explained, the supreme court established the fair notice requirementsCso that
indemnitors do not inadvertently release claims.  We therefore disagree with appellees that the
waiver in this case may be read so broadly to release subject matter and
parties not expressly listed in its terms.

The second problem appellees fail to
address is that the supreme court has never, in pre or post-injury release
cases, abandoned the requirement that those being released must be named.  The supreme court said in Memorial Medical
Center, A[a] tortfeasor can claim the protection of
a release only if the release refers to him by name with such descriptive
particularity that his identity or his connection with the tortious event is
not in doubt.@  Id.  We have explained already that the
Manufacturer is not mentioned in this release; neither are its manufacturing
activities.  Appellees= reliance on Memorial
Medical Center and its reasoning is misplaced.

Enforcing the terms of the contract
according to its terms, we hold the trial court erred when it granted summary
judgment as to Ecological Services, Inc., the Manufacturer.








Conclusion

We reverse that part of the judgment
dismissing Sydlik=s claims against Ecological Services
International, Inc. as to all claims.  We
affirm the other portions of the judgment finding that all claims against
REEIII, Inc. and Curves International, Inc. were released.[3]

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Opinion filed May 18, 2006.

Panel
consists of Justices Fowler, Edelman, and Guzman.











[1]  For all
practical purposes, parties would not rely on actual noticeCthey would have no need to rely on itCunless the notice expanded the protections clearly
afforded by the contract so that through Aactual
notice@ either more entities or more actions were covered.





[2]  We disagree
with Sydlik that the release does not mention REEIII d/b/a Curves for
Women.  Although the suit was brought
against REEIII, the release clearly lists two Curves entities: (1) Curves for
Women, and (2) Curves International.  The
first reference, especially when read in light of the entire clause, references
the Club, while the second references the Designer.





[3]  Although Sydlik=s petition was unclear as to the claims for
manufacturing and design defects, her brief states that those claims were
against Ecological Services International, Inc. only.  Based upon that statement, the judgment as to
REEIII, Inc. and Curves International, Inc. is final.