

# NUMBER 13-12-00688-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ZK DRILLING CO., LLC,**                                                  **Appellant,**

**v.**

**LAVACA RIVER OPERATING CO., LLC,**                        **Appellee.**

---

### On appeal from the 25th District Court
### of Lavaca County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

This case arises from the interpretation of a turnkey contract between appellee Lavaca River Operating Co., LLC (Lavaca), an oil and gas operator, and appellant ZK Drilling Co., LLC (ZK), a drilling contractor. Lavaca filed suit seeking a declaratory judgment that it was not obligated to pay excess costs that ZK incurred in connection with

the blowout of a well. Lavaca also sued ZK for breach of contract, negligence, fraud, and negligent misrepresentation. ZK countersued, urging a different interpretation of the contract and seeking specific performance and, in the alternative, damages.

ZK filed a motion for summary judgment on Lavaca's claims against it, which the trial court denied. Lavaca filed a no-evidence motion for partial summary judgment on ZK's counterclaims and then a traditional motion for final judgment on its claims against ZK. The trial court granted Lavaca's no-evidence motion and ordered that ZK take nothing on its counterclaim against Lavaca. It also granted Lavaca's traditional motion on its declaratory judgment and breach-of-contract claims and found ZK liable to Lavaca in the amount of $119,442.96 in breach-of-contract damages and $104,682.50 in attorney's fees. The trial court denied all other relief.

By two issues, ZK contends that the trial court erred in denying ZK's motion and granting Lavaca's motions because (1) it misconstrued the plain language of the contract between the parties, as well as the summary judgment evidence; and (2) it erred in entering declaratory judgment, breach of contract damages, and attorney's fees against ZK. We reverse and remand.

## I.    BACKGROUND

Lavaca entered into a turnkey contract with ZK to drill the Reid #1 well in Lavaca County. A blowout occurred while ZK was drilling the well. Because of the blowout, a dispute arose that led to the filing of this lawsuit. Lavaca sought a declaration that it was not obligated under the written contract or otherwise to pay excess costs that ZK incurred in connection with the blowout because ZK did not incur costs in excess of $1 million to clean up pollution and contamination resulting from the blowout. Lavaca also alleged

2

that ZK breached the contract by failing to finish the clean-up and by failing to complete the well.

ZK filed a general denial and counterclaimed for breach of contract, asserting that Lavaca owed it for all costs and expenses associated with the control and cleanup of the blowout in excess of $1 million. ZK alleged that under the contract, ZK assumed responsibility for the blowout and loss of well control, but only up to $1 million, including lost rig time and all costs associated with the re-drilling or plugging and abandoning of the well. ZK claimed that it had paid $1 million of the approximately $1.9 million in costs and that Lavaca had breached its contractual obligations by failing to pay costs in excess of $1 million.

ZK filed a traditional motion for summary judgment arguing that it was entitled to summary judgment as a matter of law on all of Lavaca's claims. ZK's basis for this motion involved the trial court's interpretation of the turnkey contract. As to Lavaca's declaratory judgment action, ZK urged that the trial court should declare that the contract provided a $1 million cap on ZK's liability with respect to the control and cleanup of any blowout, and therefore, Lavaca was obligated under section 18.14(a)(ii) of the contract to reimburse ZK for all clean-up and control costs above $1 million. Regarding Lavaca's breach-of-contract claim, ZK alleged, among other things, that its failure to finish clean-up and complete the well was due to Lavaca's refusal to reimburse ZK despite section 18.14(a)(ii) requiring it to do so, and so it was entitled to summary judgment on that claim as well. ZK attached a copy of the turnkey contract, also referred to as the model turnkey contract, in support of its motion. Lavaca filed its response asserting that ZK's interpretation of the contract was incorrect and that the $1 million limit on ZK's liability was

only with respect to the costs associated with the cleanup of pollution and contamination resulting from a blowout. Lavaca argued that the contract did not contain a blanket or general limitation on all of ZK's liability exposure. The trial court denied ZK's motion for summary judgment.

Based on its interpretation of the contract, Lavaca filed a no-evidence motion for partial summary judgment on ZK's breach-of-contract counterclaim arguing that ZK had no evidence that it incurred costs in excess of $1 million for the cleanup of pollution and contamination regarding the blowout. ZK responded, arguing that Lavaca based its argument on a false interpretation that mistakenly assumed that the $1 million limit on ZK's financial obligation applied only to costs incurred to remediate pollution or contamination. In the alternative, ZK urged that even if section 18.14(a)(ii) applies only to blowouts involving pollution and contamination, ZK did incur costs to clean up pollution and contamination. ZK's summary judgment evidence included a copy of the model turnkey contract and a copy of the deposition transcript of Thomas Pellegrini, one of Lavaca's owners. And in support of ZK's position that it incurred damages related to pollution and contamination, ZK attached as summary judgment evidence the amended affidavit of Donald Lancaster, ZK's rig superintendent at the time of the incident. Lancaster's affidavit provided, in relevant part, the following:

> I was present on April 2, 2010, at the Reid #1 well site when a blowout occurred. Gas and water were escaping from the ground around the well site. The gas was polluting and contaminating the air around the well site and needed to be controlled to prevent further pollution and contamination. I contacted the Railroad Commission to report the event and Wild Well Control to assist in controlling the blowout and to prevent further pollution and contamination. Wild Well Control arrived on the scene on April 2, 2010, and continued to work to get the well controlled. Attached as Exhibit "A" to this Affidavit are bills from Wild Well Control and other

4

contractors. All of those bills were incurred to control the well and to stop and prevent further pollution and contamination of the air and property around the well site.[1]

The trial court granted Lavaca's no-evidence motion and ordered that ZK take nothing on its counterclaim against Lavaca.

Lavaca then filed a motion for final summary judgment on its declaratory judgment and breach-of-contract claims against ZK urging the following:

(1) [Lavaca] is the prevailing party on its declaratory judgment action that [Lavaca] is <u>not</u> obligated under the [c]ontract, or otherwise, to make payment for costs allegedly incurred, by or at the order or direction of ZK, to control the Reid #1 well, and is entitled to the recovery of attorney's fees; and (2) [Lavaca] is the prevailing party on its breach of contract claim in that [ZK] breached the [c]ontract by failing to drill to the specified depth, and is entitled to the recovery of actual damages and attorney's fees.

In support of its traditional motion, Lavaca attached Thomas Pellegrini's affidavit. In his affidavit, Pellegrini set out that he was Lavaca's owner and was familiar with the "day to day operations of [Lavaca]" and the contract between Lavaca and ZK. He stated, among other things, that "while ZK was drilling, a blowout occurred. In connection with the blowout, there was no pollution, contamination, fires, or injuries." Pellegrini also discussed the completion of the well and the costs Lavaca incurred to complete it.

ZK responded, asking the trial court to reconsider its earlier rulings. ZK again presented its position that, under the contract, it was "entitled to be reimbursed for costs exceeding $1 million incurred to clean up after the blowout, not merely to clean up

---

[1] The trial court granted ZK's motion to amend Lancaster's affidavit after it granted Lavaca's no-evidence motion for partial summary judgment but before it denied ZK's motion to reconsider its ruling. ZK had attached a spreadsheet of ZK's "Blowout Payment Schedule" to Lancaster's original affidavit but had not attached copies of the bills and invoices summarized on the spreadsheet. It appears as if ZK substituted copies of those bills and invoices for the spreadsheet when it amended Lancaster's affidavit, the text of which was not changed. Lavaca does not argue that the bills and invoices should not have been made part of the summary judgment record, and we will consider them in our review.

pollution or contamination caused by the blowout." ZK also urged, however, that the record demonstrated that there was pollution for which it sought assistance and that it incurred costs to clean up the pollution and contamination. To its response, ZK attached, among other things, Lancaster's affidavit.

The trial court granted Lavaca's motion for final summary judgment and awarded Lavaca a total of $224,125.46, which included $36,000 for prepayment made by Lavaca to ZK under the contract, $83,442.96 for the increased cost Lavaca incurred to re-drill the Reid #1 well as a result of ZK's breach of contract, and $104,682.50 to Lavaca for attorney's fees, plus interest and court costs. The judgment made the interlocutory judgment granting Lavaca's no-evidence motion on ZK's counterclaim final. This appeal followed.

## II. INTERPRETATION OF THE TURNKEY CONTRACT

By the first of two sub-issues in its first issue, ZK argues that the trial court misconstrued the plain language of the contract between ZK and Lavaca. It asserts that under well-established rules of contract interpretation, the turnkey contract provides that Lavaca is responsible for the general costs for any blowout for which costs exceed $1 million, not just for costs related to pollution and contamination. Lavaca's position is that the $1 million limit on ZK's liability applies only to costs associated with cleanup of pollution and contamination resulting from a blowout. At issue, then, is the interpretation of the contract, specifically paragraph 18.14(a), which the parties refer to as the excess expense provision.

### A. Applicable Law

In discerning the parties' intent, we construe contracts as a whole and harmonize

terms when necessary. *See In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (per curiam). Courts have even considered "headings" within the contract as part of this review. *See Travelers Indem. Co. of R.I. v. Lucas*, 678 S.W.2d 732, 734 (Tex. App.—Texarkana 1984, no writ). "[T]erms stated earlier in the contract are favored over conflicting terms recited later in the document." *Lavaca Bay Autoworld v. Marshall Pontiac*, 103 S.W.3d 650, 659 (Tex. App.—Corpus Christi 2003, pet. dism'd). And circumstances germane to the parties' intent include the commonly understood meaning of a term in the relevant industry. *See Staff Indus., Inc. v. Hallmark Contracting, Inc.,* 846 S.W.2d 542, 546 (Tex. App.—Corpus Christi 1993, no writ) (setting out that the parties' intent is to be ascertained from the language of the contract, construed in connection with the circumstances surrounding its execution, which would include "what the particular industry considered to be the norm or reasonable and prudent at the time").

"If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law." *Zurich Am. Ins. Co. v. Hunt Petroleum (AEC), Inc.*, 157 S.W.3d 462, 465 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "If, however, a contract is capable of more than one reasonable interpretation, it is ambiguous." *Id.* (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). "When a contract is ambiguous, summary judgment is improper because the interpretation of the contract becomes a fact issue." *Id.* (citing *Coker*, 650 S.W.2d at 394).

**B.    Discussion**

Paragraph 18.14(a) of the turnkey contract is titled "Pollution, Contamination and Blowout Control." It provides, in relevant part, as follows:

7

Except as otherwise provided herein, while operations are being conducted on a turnkey Basis, Contractor [ZK] shall assume all responsibility for, and shall protect, defend and indemnify Operator [Lavaca] from and against any loss, expense, claim, demand or liability for pollution or contamination (including control and removal thereof) originating from:

. . . .

(ii) blowout . . . .   In the event of a blowout . . . , Contractor assumes liability for control of such well and/or the drilling of a relief well or wells. Contractor's maximum liability under this subparagraph 18.14(a) shall not, however, exceed $1,000,000 per occurrence, including lost rig time and any and all costs associated with the re[-]drilling or plugging and abandonment of the well under Paragraph 18.7. . . . Operator shall assume full responsibility for all costs and expenses arising under this Subparagraph 18.14 in excess of said $1,000,000 and shall release Contractor from any liability for, and shall protect, defend and indemnity Contractor from said excess.

Complaining only of paragraph 18.14(a), ZK contends that the title—"Pollution, Contamination *and Blowout* Control" (emphasis added)—makes it clear that the intent of the parties was to include general blowout costs as part of the operator's extra expense liability.   ZK argues that "[i]f the parties had meant to limit this to pollution and contamination from a blowout they could easily have said so."   Without identifying any other provision of the contract or any specific term of paragraph 18.14(a), ZK asserts that "[t]o construe the contract to limit excess expense liability to pollution and contamination expenses only, fails to harmonize the provisions and renders some terms meaningless." We are not persuaded by this argument.

Paragraph 18.14(a) specifically sets out that the contractor, ZK, shall assume all responsibility for "any loss, expense, claim, demand or liability for pollution or contamination (including control and removal thereof)" originating from, among other things, a "blowout."   According to this paragraph, ZK's maximum liability for controlling

8

"such a well" and for drilling relief wells, if any, shall not exceed $1 million. It provides that on "such a well," the operator, Lavaca, shall assume full responsibility for all costs and expenses in excess of $1 million.

We interpret this paragraph to provide that certain costs for ZK are limited, but only when those costs involve pollution or contamination from, as in this case, a blowout. Under this interpretation, we can harmonize and give effect to the relevant provisions and terms of paragraph 18.14(a) without rendering any meaningless. *See In re Serv. Corp.*, 355 S.W.3d at 661. And we find no other provision or term in the contract, and ZK directs us to none, which we cannot harmonize and which would be rendered meaningless by this interpretation. *See id.*

Relying on *Lavaca Bay Autoworld*, ZK also contends that the earlier-stated title—"Pollution, Contamination and Blowout Control"—is favored over later, conflicting sentences which seem to restrict cleanup to pollution and contamination and another sentence which refers only to blowout costs. *See* 103 S.W.3d at 659. ZK does not develop this contention further, and we have found no conflict between the paragraph's title and the paragraph's language. The title refers conjunctively to "Pollution, Contamination and Blowout," and the language within the paragraph discusses limits on a contractor's costs when pollution, contamination, *and* a blowout occur.

Finally, citing *Staff Industries,* ZK asserts that "[t]he contract in question, the 'Model Turnkey Contract,' is frequently used between well operators and drilling contractors. It is significant that the commonly understood meaning of Paragraph 18.14(a) among well operators and drilling contractors, is that it applies separately and independently to pollution, contamination, and blowouts." *See* 846 S.W.2d at 546. Because ZK did not

provide citations to the record that support this argument, we conclude it has been inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

Because we can give this turnkey contract a certain interpretation, the contract is not ambiguous and does not become a fact issue. *See Zurich Am. Ins. Co.*, 157 S.W.3d at 465 (citing *Coker*, 650 S.W.2d at 394). We overrule ZK's first issue to the extent it challenges the trial court's interpretation of the turnkey contract.

### III. LAVACA'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT ON ZK'S BREACH-OF-CONTRACT COUNTERCLAIM

By a second sub-issue in its first issue, ZK challenges the trial court's granting of Lavaca's no-evidence motion for summary judgment on ZK's counterclaim. ZK contends that even under Lavaca's interpretation of paragraph 18.14(a), the trial court erred in granting Lavaca's no-evidence motion because there was evidence of costs expended to control and clean up pollution and contamination that resulted from the blowout. We agree.

### A. Standard of Review and Applicable Law

We review summary judgments de novo. *Valence Op. Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.). A no-evidence summary judgment is equivalent to a pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1999, pet. denied). We must consider all the evidence in the light most favorable to the party against whom the trial court rendered summary judgment, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors

10

could not.  *Timpte Indus. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

A trial court should grant a no-evidence summary-judgment motion if there is no evidence of at least one essential element of the plaintiff's claim or, in this case, the counter-plaintiff's claim.  *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).  It must grant a no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of summary judgment evidence to raise a genuine issue of material fact on the challenged elements.  TEX. R. CIV. P. 166a(i); *City of Keller*, 168 S.W.3d at 810.  A nonmovant produces more than a scintilla of evidence when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *see City of Keller*, 168 S.W.3d at 827; *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).  A nonmovant produces no more than a scintilla when the evidence is so weak that it does no more than create a mere surmise or suspicion of a fact.  *Forbes*, 124 S.W.3d at 172.  "To defeat a motion made under paragraph (i), the respondent is not required to marshal [his] proof; [his] response need only point out evidence that raises a fact issue on the challenged elements."  TEX. R. CIV. P. 166a(i), cmt.

## B.     Discussion

ZK argues that, even if paragraph 18.14(a) only applies to blowouts involving pollution and contamination, the trial court erred in granting Lavaca's no-evidence summary judgment motion on ZK's breach-of-contract counterclaim because "the [uncontroverted and unobjected-to] evidence shows that ZK incurred such expenses in

11

excess of $1 million in the amount of approximately $.9 million. . . ." ZK asserts, "the evidence shows from a person with direct and personal knowledge that the blowout did cause pollution and contamination to the environment and that the costs were associated with their cleanup." The question we address is whether ZK provided more than a scintilla of evidence of a blowout involving pollution or contamination and more than a scintilla of evidence of costs associated with that control and cleanup.

In response to Lavaca's no-evidence motion for summary judgment, ZK filed the amended affidavit of Lancaster who was the rig superintendent for ZK at the time of the relevant events. Lancaster was present on April 2, 2010, at the Reid #1 well site when the blowout occurred. He observed gas and water escaping from the ground around the well site.[2] Lancaster stated that gas polluted and contaminated the air around the site and needed to be controlled to prevent further pollution and contamination. In his affidavit, Lancaster set out that he contacted the Railroad Commission to report the event. He also contacted Wild Well Control for assistance in controlling the blowout and in preventing further pollution and contamination. Wild Well Control arrived that day and continued to work to get the well controlled. To his amended affidavit, Lancaster attached bills from Wild Well Control and other contractors who worked on the well. Lancaster avowed that all of the attached bills were incurred to control the well and to prevent further pollution and contamination of the air and property around the well site. It is undisputed that the bills totaled approximately $1.9 million.

Considering all the evidence in the light most favorable to ZK, crediting evidence

---

[2] ZK also identified rocks as another byproduct of the blowout that polluted or contaminated the land. But this fact is not in evidence, and the argument was not made to the trial court. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

12

favorable to ZK if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, *see Gish*, 286 S.W.3d at 310; *City of Keller*, 168 S.W.3d at 827, we conclude that ZK produced more than a scintilla of summary judgment evidence to raise a genuine issue of material fact regarding whether it incurred costs associated with a blowout involving pollution or contamination. *See* TEX. R. CIV. P. 166a(i); *City of Keller*, 168 S.W.3d at 810. We cannot conclude that ZK's evidence is so weak that it does no more than create a mere surmise or suspicion of a fact. *See Forbes*, 124 S.W.3d at 172. Instead, we conclude that ZK's evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Ridgway*, 135 S.W.3d at 601; *see also* TEX. R. CIV. P. 166a(i), cmt. The trial court erred when it granted Lavaca's no-evidence motion for summary judgment on ZK's breach of contract counterclaim because ZK raised genuine issues of material fact as to these challenged elements. *See* TEX. R. CIV. P. 166a(i); *City of Keller*, 168 S.W.3d at 810. We sustain this portion of ZK's first issue.

## IV. LAVACA'S FINAL TRADITIONAL MOTION FOR SUMMARY JUDGMENT

By its second issue, ZK challenges the trial court's granting of Lavaca's traditional motion for summary judgment on its claims against ZK. In support of this issue, ZK incorporates its arguments made above.

### A. Standard of Review

In our de novo review of a traditional summary judgment, *see Dorsett*, 164 S.W.3d at 661; *Alejandro*, 84 S.W.3d at 390, we follow these well-established rules: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed

13

material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

## B.    Discussion

After the trial court granted Lavaca's no-evidence motion for summary judgment on ZK's counterclaim, Lavaca moved for a final, traditional summary judgment on its claims against ZK.   In sum, Lavaca asked for a declaration that it had no liability to ZK under the contact because the contract required clean up of pollution and contamination resulting from the blowout and there was none.   Lavaca filed Pellegrini's affidavit, in which he stated, "there was no pollution, contamination, fires, or injuries" from the blowout.   Lavaca also claimed to be the prevailing party on its breach-of-contract claim because it paid ZK half of the amount of the contract prior to the blowout and because ZK failed to drill the well to the required depth.   In his affidavit, Pellegrini attested to costs Lavaca incurred during this process.

ZK responded and asked the trial court to reconsider its earlier rulings. Lancaster's affidavit, attached to the response, set out, among other things, that "[g]as and water were escaping from the ground around the well site.   The gas was polluting and contaminating the air around the well site and needed to be controlled to prevent further pollution and contamination."   Lancaster also stated that a well control service worked "to get the well controlled" and that all bills attached to his affidavit "were incurred to control the well and to stop and prevent further pollution and contamination of the air and property around the well site."

14

Based on our de novo review, we conclude that Lavaca did not meet its burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on its affirmative claims against ZK. *See id.* Instead, taking as true evidence favorable to ZK, indulging every reasonable inference in favor of ZK, and resolving any doubts in ZK's favor, we conclude that there are disputed fact issues related to whether there was pollution or contamination from the blowout and, if so, what costs, if any, were incurred for the cleanup and control of the pollution or contamination. *See id.* These disputed fact issues preclude summary judgment. *See id.* Because there are fact issues, the trial court erred in granting summary judgment in favor of Lavaca on its declaratory judgment claim. *See* TEX. R. CIV. P. 166a(c); *Dorsett*, 164 S.W.3d at 661. And because these are threshold matters that must be answered before Lavaca's breach-of-contract claim against ZK can be resolved, the trial court also erred in granting summary judgment in Lavaca's favor on that claim. We sustain ZK's second issue.

## V. CONCLUSION

We reverse the judgment as to ZK's cause of action for breach of contract against Lavaca and Lavaca's declaratory judgment action and breach-of-contract claim against ZK and remand the cause for proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 13th
day of February, 2014.

15